ATTORNEYS FOR PETITIONER:
**MARILYN S. MEIGHEN**
ATTORNEY AT LAW
Carmel, IN

**BRIAN A. CUSIMANO**
**ZACHARY D. PRICE**
ATTORNEYS AT LAW
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**ABRAHAM M. BENSON**
**BRENT A. AUBERRY**
**DAVID A. SUESS**
**BRIGHAM E. MICHAUD**
FAEGRE DRINKER BIDDLE & REATH
LLP
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

MADISON COUNTY ASSESSOR,       )
                               )
    Petitioner,                )
                               )
        v.                     )   Case No. 24T-TA-00009
                               )
KOHL'S INDIANA, LP,            )
                               )
    Respondent.                )

FILED
Dec 06 2024, 4:24 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**December 6, 2024**

MCADAM, J.

Administrative agencies must give the reasons for their decisions. In its resolution of this property tax appeal, the Indiana Board of Tax Review determined that the taxpayer's appraisal is sufficient to meet the burden of proof and establish the true tax value of the subject property but did not provide the facts or rationale for its

conclusion. Upon review, the Court remands the case to the Board for further explanation of its findings of fact and ultimate conclusion.

## FACTS AND PROCEDURAL HISTORY

Kohl's owns and operates a retail store located at 4544 South Scatterfield Road in Anderson, Indiana. The property was assessed at $4,513,400 for 2019, $4,517,000 for 2020, and $4,517,000 for 2021.

Believing these assessments to be too high, Kohl's appealed them to the Madison County Property Tax Assessment Board of Appeals, which upheld the 2019 and 2020 assessments but did not act on the 2021 assessment challenge. Kohl's then appealed all three assessments to the Indiana Board. The Board held a five-day hearing on the appeals. At the hearing, Kohl's presented an appraisal that developed all three recognized appraisal approaches for both 2020 and 2021. The appraisal reconciled to valuations of $2,360,000 for 2020 and $2,380,000 for 2021. In response, the Assessor presented an appraisal that also developed all three approaches for both 2020 and 2021. That appraisal reconciled to valuations of $4,800,000 for 2020 and $4,900,000 for 2021.

In its final determination, the Board individually reviewed each of the three valuation approaches used in the Kohl's appraisal, noting significant deficiencies in each. For the sales comparison approach analysis, it identified flaws in each of the eight comparable sales and concluded that the analysis "relied almost exclusively on sales of properties that are not particularly comparable to the subject property and failed to adequately support several of [the] . . . adjustments." (See Cert. Admin. R. at 987-89 ¶¶ 87-92.) For the income approach analysis, it identified flaws with four of the five

2

comparable leases underlying the rental income estimate that it found limited their ability to serve as reliable comparisons. It also found that the income analysis failed to explain the adjustments made for "conditions of lease, size, arterial attributes, demographic attributes, retail submarket attributes, and age/condition" and did not provide enough detail about the market data used to adjust for differences in those attributes. (*See* Cert. Admin. R. at 989-90 ¶¶ 94-95.) For the cost approach analysis, it concluded that the obsolescence estimate used in the analysis was unsupported and questioned whether such an adjustment was necessary at all. It also found the obsolescence adjustment was "dependent on the strength of the other two approaches" (i.e., sales comparison and income) and that, because the "sales and income approaches did not produce particularly strong valuations, . . . their use in quantifying obsolescence prevented [the appraiser] from determining a reliable adjustment." (*See* Cert. Admin. R. at 991-92 ¶ 101.) In the end, the Board concluded that each of the three valuation approaches used in the Kohl's appraisal "did not produce particularly strong value conclusions." (*See* Cert. Admin. R. at 987 ¶ 86.) But it specifically found that each of the valuation approaches was "minimally probative" with the cost approach offering the "least probative valuation."[1]

After reviewing each of the appraisals, the Board concluded, without any

---

[1] In summarizing its analysis of the Kohl's cost approach, the final determination states that it found the sales comparison approach to be minimally probative and notes that it "reached a similar conclusion regarding [Kohl's'] income approach[.]" (*See* Cert. Admin. R. at 991-92 ¶101.) It then states that it "ultimately agree[s] with [Kohl's] that [its] cost approach produced the least probative valuation of any of the three approaches [it] developed." (*See* Cert. Admin. R. at 991-92 ¶101.)

explanation, that the Kohl's appraisal is "sufficient to make a prima facie case."[2] The Board then proceeded to weigh the competing appraisals against each other, specifically criticizing the methodology in the Assessor's sales comparison approach and finding that deficiency to "ultimately tip the scales in Kohl's favor, if only slightly." (*See* Cert. Admin. R. at 997 ¶ 116.) It then found the Kohl's appraisal to be the "most persuasive valuation evidence of the subject property's true tax value[.]" (*See* Cert. Admin. R. at 997 ¶ 116.) Ultimately, the Board adopted the Kohl's appraisal values of $2,360,000 for 2020 and $2,380,000 for 2021 and ordered a 2019 assessment of $2,312,800 after applying the trending formula stipulated in the appeal management plan.

The Assessor then filed this original tax appeal.

## STANDARD OF REVIEW

This Court's review of Indiana Board decisions is governed by Indiana Code § 33-26-6-6, the provisions of which closely mirror those controlling judicial review of administrative decisions governed by Indiana's Administrative Orders and Procedures Act ("AOPA"). *Compare* IND. CODE § 33-26-6-6(e) (2024) *with* IND. CODE § 4-21.5-5-14(d) (2024). Under Indiana Code § 33-26-6-6, a party seeking to overturn a final determination of the Board bears the burden of demonstrating its invalidity. I.C. § 33-26-6-6(b). Challengers must demonstrate that the Board's final determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by

---

[2] The Board's review of the Assessor's appraisal is not material to this appeal because the aspect of the Board's determination at issue here concerns only the Kohl's appraisal.

law; or unsupported by substantial or reliable evidence. I.C. § 33-26-6-6(e).

## DISCUSSION

On appeal, the Assessor asks this Court to overturn the Board's decision because it is an abuse of discretion and unsupported by substantial evidence. The Assessor points out that the Board does not explain "how or why" it determined that the Kohl's appraisal met the burden of proof. (*See* Pet'r Br. at 24; Pet'r Reply Br. at 10.) The Assessor thus alternatively urges this Court to remand this case to the Board to explain its ultimate finding regarding the Kohl's appraisal and identify the factual findings underlying that conclusion. Kohl's responds that "[a] robust record supports the Board's determination[,]" arguing that the decision is supported by more than 2,000 pages in the administrative record and 30 paragraphs of analysis in the Board's final determination. (Resp't Br. at 11; Oral Arg. Tr. at 27-28.) The Court agrees with the Assessor that the Board's explanation of its decision is inadequate to permit meaningful review.

It is a bedrock principle of administrative law that an administrative agency adjudicating a dispute must articulate the reasons underlying its decision. Parties "have a legal right to know the evidentiary bases upon which the [agency's] ultimate finding rests." *Perez v. U.S. Steel Corp.*, 426 N.E.2d 29, 32 (Ind. 1981) (citation omitted). "[A] disappointed party, whether he plans further proceedings or not, deserves to have the satisfaction of knowing why he lost his case." *Id*. at 32 n. 1 (internal quotation marks and citation omitted). Explanation of an agency's reasoning coupled with detailed findings enables parties "to formulate intelligent and specific arguments on review" and facilitates judicial review. *Id.* Without adequate findings and explanation,

> parties are left uninformed as to the evidentiary bases for the [agency's]
> ultimate disposition; operating in a vacuum, they are hampered, if not

precluded, from formulating specific arguments for judicial review. In turn, the disposition of appeals in our appellate tribunals is delayed by the necessity of resolving broadside claims and searching the entire record.

*Rork v. Szabo Foods*, 436 N.E.2d 64, 69 (Ind. 1982). More fundamentally, it protects "against careless or arbitrary administrative action" by encouraging "that a careful examination of the evidence, rather than visceral inclinations, will control the agency's decision." *Id*. at 67 (internal quotation marks and citation omitted). A thorough explanation empowers parties and reviewing courts to test the soundness of the agency's rationale and frees them from the need to speculate about the factual bases of a decision. *Perez*, 426 N.E.2d at 32; *Rork,* 436 N.E.2d at 69.

For these reasons, an agency must "provide findings that are specific enough to demonstrate to the court which facts the hearing judge relied upon and the reasoning used in reaching the ultimate decision." *Wickes Furniture Co. v. Gorgijovski*, No. 93A02-0710-EX-859, 2008 WL 927999, at *3 (Ind. Ct. App. Apr. 8, 2008) (citation omitted). These reasons must be stated with specificity and provide the evidentiary analysis underlying the agency's findings and conclusions. *Perez*, 426 N.E.2d at 32. The agency must explain not only its ultimate finding in the matter, but also "the various relevant sub-issues and factual disputes which, in their sum, are dispositive of the particular claim or ultimate factual question before [it]." *Id.* at 33. "The more complex or technical the sub-issues or factual disputes are in any claim, the greater the particularity which is needed to satisfy the various purposes of the requirement." *Id.* In essence, the agency's decision "must provide a road map from which readers can clearly delineate the basis for [the] decision" based on the evidence. *Wickes Furniture Co.,* 2008 WL 927999, at *3 (citation omitted).

These principles are "essential to an effective system of administrative law" and are not "predicated on esoteric legal technicalities or the rote imposition of statutory provisions." *Perez*, 426 N.E.2d at 31. They echo principles of due process, *see, e.g., Perdue v. Gargano*, 964 N.E.2d 825, 835 (Ind. 2012) (holding that the Fourteenth Amendment's Due Process Clause requires a detailed explanation of the reasons for an administrative agency's adverse action to protect against arbitrary decisions and facilitate judicial review), and are an inherent part of the adjudicative process carried out by administrative agencies, *see Perez*, 426 N.E.2d at 31 ("The practical reasons for requiring administrative findings are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, irrespective of a statutory requirement.") To this end, our Legislature has specifically emphasized this requirement for the Board by statute, providing that "[a] final determination [of the Board] must include separately stated findings of fact for all aspects of the determination[,]" and "[f]indings of ultimate fact . . . accompanied by a concise statement of the underlying basic facts of record to support the findings." IND. CODE § 6-1.1-15-4(j) (2024). As such, the Court must evaluate whether the Board's final determination in this case has satisfied these requirements.

In its final determination, the Board concluded, without any explanation, that the appraisal offered by Kohl's is "sufficient" to meet the burden of proof.[3] It then

---

[3] The Board's final determination states that the Kohl's appraisal is "sufficient to make a prima facie case[.]" (*See* Cert. Admin. R. at 997 ¶ 116.) Based on the context, the Court understands the Board's statement as a finding that the Kohl's appraisal is sufficient to meet the burden of proof (i.e. the burden of persuasion) as that is the question to be answered by the Board once a hearing has concluded and both parties have presented their cases. *See* 31A C.J.S. Evidence § 184 (2024) (explaining that the burden of persuasion is triggered once the parties have introduced their evidence). The burden of proof in an appeal like this one requires the taxpayer to prove that the assessment is incorrect. *See Eckerling v. Wayne Twp. Assessor*, 841 N.E.2d

immediately proceeded to consideration of whether the Assessor's appraisal was more persuasive than the Kohl's appraisal, noting three similarities and one difference between the two appraisals.[4] Based on that difference, the Board concluded that the Assessor's appraisal is less persuasive than the Kohl's appraisal. The Board ultimately determined that the assessment should be reduced to the reconciled values proffered by the Kohl's appraisal.

The question in this case is not one of quantitative adequacy. The Court is not required here to discern the line between some and enough. Instead, in this instance, the Board has simply offered no justification whatsoever to support its ultimate conclusion that the Kohl's appraisal is adequate to establish the true tax value of the subject property and thereby sufficient to meet the burden of proof. It is not enough for the Board to determine that the taxpayer's appraisal is more persuasive than the assessor's appraisal. The Board must identify the preponderance of evidence that supports its ultimate finding and state why it supports that finding. *See* I.C. § 6-1.1-15-4(j).

In essence, the final determination is missing the connective tissue between its criticisms of the Kohl's appraisal and its ultimate conclusion. The Board needed to

---

674, 677 (Ind. Tax Ct. 2006); REAL PROPERTY ASSESSMENT MANUAL FOR 2011 (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2011) (amended 2020)) at 3.

[4] The three similarities identified by the Board are (1) that both appraisals utilize all three valuation approaches, (2) that neither appraisal's cost approach was persuasive, and (3) that the sales comparison approaches in both appraisals have "similar issues related to the selection of comparable sales and leases and their adjustment choices." (*See* Cert. Admin. R. at 997 ¶116.) The one difference identified by the Board is that the Assessor's appraisal "rel[ies] on a preselected set of comparable sales and leases" and reli[es] on allocated sales prices from a portfolio sale in [the] sales comparison approach]" while the Kohl's appraisal does not. (*See* Cert. Admin. R. at 997 ¶116.)

8

explain how the Kohl's appraisal, despite the shortcomings and limitations identified by the Board, nonetheless established by a preponderance of the evidence that the assessment is incorrect. It needed to identify the evidence that supported its conclusion about the Kohl's appraisal and explain how that evidence led the Board to its conclusion. Similarly, the Board needed to provide reasoning to support its intermediate factual findings related to the probative value of the three valuation approaches in the Kohl's appraisal and to identify the basic factual findings underlying those intermediate findings. These intermediate findings are relevant sub-issues that are material to the Board's ultimate conclusion about the true tax value of the subject property. It was not enough for the final determination to identify flaws in the three valuation approaches utilized by the Kohl's appraisal and then, without explanation, conclude that each is "minimally probative." The final determination does not offer any countervailing findings of fact to support those intermediate findings of probativeness nor does it offer any explanation reconciling the flaws with the intermediate findings of probativeness.[5]

**CONCLUSION**

For the foregoing reasons, the Court finds that the Board did not adequately explain its findings and conclusions to allow the Court to properly review its decision. The Court, therefore, REMANDS this matter to the Board for further action consistent with this opinion. The Court shall retain jurisdiction of the appeal.

---

[5] Despite the flaws, the Court commends the Board for the clarity of its initial findings of fact. The Board clearly conveyed its findings about each appraisal and each component of each appraisal. It logically and directly stated its evaluation of the flaws and its basic findings of fact. This is as it should be. The only shortcoming here is that the findings did not go far enough and did not explain how the Board reached its intermediate findings and ultimate conclusions.